**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>Ex. Rel. JOYCE RUBLE<br>　　　　**Plaintiff,**<br>　　v.<br>**TROY SKIDMORE, D.O.,** *et al.*<br>　　　　**Defendants.** | **Case No. 2:09-cv-549**<br>**Judge Peter C. Economus**<br>**MEMORANDUM OPINION AND ORDER** |

This matter is before the Court for consideration of Relator Joyce Ruble's motion (A) to dismiss the case without prejudice, to which the Government consents, and (B) to maintain a seal over the case, or alternatively to make public only a version of the complaint redacted to remove information identifying Relator, which the Government opposes. (Dkt. 11.) For the reasons that follow, the Court **GRANTS** Relator's motion to dismiss the case without prejudice and **DENIES** her motion to maintain a seal over the case. The Court hereby **ORDERS** that this case be dismissed without prejudice. The Court further **ORDERS** that the Complaint, this Order, and all subsequently filed pleadings shall be unsealed. All other pleadings filed in this action shall remain under seal absent further order of the Court.

**I.    Background**

Relator Joyce Ruble filed this case under the False Claims Act (FCA) on behalf of the United States against Defendant Devola Orthopedic Center of Sports Medicine, Inc. ("Devola") and its owner, Defendant Troy Skidmore, D.O., an orthopedic surgeon. Defendants employed Relator as the office manager of Devola until she resigned in January of 2009. (Compl. ¶ 10.) As office manager, Relator was responsible for billing Defendant Skidmore's reimbursement claims to insurers, including federally funded healthcare programs ("Federal Programs"). (*Id.*)

In her complaint, Relator alleges that Defendants fraudulently billed Federal Programs. Specifically, she alleges that, on a regular basis, Defendant Skidmore (i) billed for office appointments without proper documentation; (ii) required unqualified personnel to perform services for which he received payment; (iii) billed at a higher coding level than justified for the treatment; and (iv) billed for services that were included within bundled surgical codes. (Compl. ¶ 2.) Relator asserts that each claim for reimbursement submitted to a Federal Program which resulted from an instance of the above conduct constitutes a false claim. (*Id.* at ¶ 3.)

As the FCA requires, *see* 31 U.S.C. § 3730(b)(2), Relator's complaint was filed under seal and served on the Government. The FCA provides that a complaint shall remain sealed for at least 60 days, and the Government may request extensions while it investigates the matter and determines whether to intervene. *Id.*

Following an investigation, the Government represented to the Court that it believes this action was filed in good faith, but informed Relator of its decision not to intervene at this time. (Resp. 7, Mot. 2.) Relator states that she has considered the substantial cost and risk of proceeding alone and has decided against it. With the Government's consent, Relator therefore moves to voluntarily dismiss the case without prejudice.

Relator also moves to maintain a seal over the case, or alternatively to make public only a version of the complaint redacted to remove information identifying her. While the Government opposes maintaining the seal over the complaint,[1] Relator states that lifting the seal could compromise her ability to earn an income, lead to potential physical retaliation, and harm her family. Relator is an experienced medical transcriptionist, coder, and biller; and has since her resignation from Devola worked as a medical transcriptionist, transcribing the records of

---

[1] The Government supports maintaining the seal over all documents except for the complaint. (Resp. 8.)

Defendant Skidmore and several area physicians who know Defendant Skidmore professionally and socially. (Compl. ¶ 11, Mot. 6, Ruble Decl. ¶ 5.) Relator states in her Declaration:

> 10. While I no longer work for Dr. Skidmore and cannot be fired by him, I am very concerned about other forms of professional retaliation. If my role in this case becomes public, I will forever be viewed with suspicion and distrust in the local medical community. The medical community in Marietta, Ohio is quite small and tightknit. Dr. Skidmore knows and associates with most of the physicians I do transcriptions for or could do medical administration for in the future. I believe my job prospects for doing transcription would be substantially curtailed, especially because the work I do as a transcriptionist and did perform as an office administrator is confidential and doctors who know I reported one of their colleagues to the Government will be leery of trusting me.
>
> 11. . . . [O]ne of my employers . . . will no longer be doing transcriptions after March. Because my other transcriptionist work only covers 2 days a week, I will have to seek additional employment immediately.
>
> 12. I have no other professional training besides for office administration and medical transcribing. It is imperative that I be able to continue working at this time in this medical community. Within the past few months, my husband recently underwent multiple heart surgeries as well as a lung surgery. He is elderly and will not be able to return to work in the foreseeable future. I am also his primary caregiver. . . . [A]ny publicity from the case materials being unsealed would be particularly stressful for both of us at this point in time. . . .

(Ruble Decl. ¶¶ 10–12.)

Relator also states that she fears physical retaliation from Defendant Skidmore and his wife, Melissa Skidmore, who during the Government's investigation allegedly telephoned Relator and accused her of writing a letter "filled with lies." (Ruble Decl. ¶¶ 13–14.) Relator believes that Defendant and Melissa Skidmore are responsible for a series of distressing hang-up phone calls made to Relator's family. (*Id.* at ¶ 15.) She also alleges that "[a]round April of 2008, Melissa Skidmore deliberately shoved [Relator] with her hand while [they] were both at the Devola office." (*Id.* at ¶ 16.)

## II.     Motion to Dismiss Without Prejudice

Because the Government consents to the voluntary dismissal of this action without prejudice, and Defendants have not been served, the Court hereby **GRANTS** Relator's motion to dismiss without prejudice.  *See* Fed. R. Civ. P. 41(a)(2); 31 U.S.C. § 3730(b)(1) (allowing dismissal of an FCA action with the written consent of the Court and the Government).

## III.    Motion to Maintain Seal

### A.     The FCA's Under-Seal Requirement

This Court has held that "[t]he False Claims Act expressly contemplates the unsealing of the complaint." *United States ex rel. Howard v. Lockheed Martin Corp.*, No. 1:99-cv-285, 2007 U.S. Dist. Lexis 37289 at *6 (S.D. Ohio May 22, 2007); *see also United States ex. Rel Herrera v. Bon Secours Cottage Health Svcs.*, 665 F. Supp. 2d 782, 784–85 (E.D. Mich. Sept. 16, 2008) (citing *United States ex rel. Erickson v. Univ. of Wash.*, 339 F. Supp. 2d 1124, 1126 (W.D. Wa. 2004)).  "While the FCA clearly encourages private enforcement suits, there is nothing in the FCA evincing a congressional intent to impose a permanent seal over all *qui tam* suits where a relator seeks to voluntarily dismiss the action after the Government declines to intervene." *Herrera*, 665 F. Supp. 2d at 784.  Rather, the FCA provides that the complaint is to remain sealed for at least 60 days, with extensions which may be requested by the government, while the government investigates the matter and determines whether to intervene.  31 U.S.C. § 3730(b)(2).

The conclusion that the FCA does not provide for permanent sealing of complaints is supported by the Sixth Circuit's holding that "the primary purpose of the [FCA's] under-seal requirement is to permit the Government sufficient time in which it may ascertain the status quo and come to a decision as to whether it will intervene in the case filed by the relator." *United States v. LHC Group, Inc.*, 623 F.3d 287, 292 (6th Cir. 2010) (dismissing a *qui tam* action

4

because the relator failed to satisfy the FCA's under-seal requirement). The Court noted that, while the under-seal requirement has the effect of "protect[ing] the defendant's reputation from unfounded public accusations," an effect "which could well be laudable," the Court had "found no support in the legislative history of the 1986 amendments to the FCA for the proposition that this was one of the *purposes* of the under-seal requirement." *Id.* at 293 n.4.

      B.      <u>**Presumption of Public Access**</u>

The Supreme Court has stated that "every court has supervisory power over its own records and files, and [public access to such records] has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). The Sixth Circuit has held that "the decision as to access is one best left to the sound discretion of the trial court." *Krause v. Rhodes*, 671 F.2d 212, 219 (6th Cir. 1982). *See also Tomaskovich v. AT&T Wireless*, 62 Fed. Appx. 632, 633 (6th Cir. 2003) (holding that district courts generally have "broad discretion regarding the decision to seal records") (citing *In Re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003)). "Having 'supervisory power' or 'discretion' to deny access to documents does not, however, imply that the District Court operates without standards. . . . The District Court's discretion is circumscribed by a long-established legal tradition." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983).

Because the FCA does not provide for permanent sealing of complaints, Relator's request for a permanent seal must overcome the strong presumption in favor of access to judicial records. *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir. 1983); *see Herrera*, 665 F. Supp. 2d at 785. Courts have created content-based exceptions to the strong presumption in favor of openness in order to protect a defendant's right to a fair trial, certain privacy rights, trade secrets, and national security. *Brown*, 710 F.2d at 1179. However,

"[o]nly the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983) (citing *Brown*, 710 F.2d at 1179–80; *In Re Application National Broadcasting Co., Inc., (United States v. Myers)*, 635 F.2d 945, 952 (2d Cir. 1980)). For example, simply showing that public disclosure would cause harm to a reputation "is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records," and "private litigants' interest in protecting . . . their commercial self-interest" does not constitute "grounds for keeping the information under seal." *Brown*, 710 F.2d at 1179; *P&G v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996). Moreover, the presumption in favor of public access to court filings is especially strong where the filings involve matters of particular public concern, such as allegations of fraud against the government. *Herrera*, 665 F. Supp. 2d at 785 (citations omitted).

In *Herrera*, the Eastern District of Michigan determined that the plaintiff-relator's "fear of employment-related retaliation [was] not completely unfounded given her alleged constructive discharge," but nonetheless held that her fear of retaliation by a current or future employer was not "sufficient to overcome the strong presumption in favor of access to judicial records." *Herrera*, 665 F. Supp. 2d at 785–86. The court explained that "to conclude otherwise would ignore that [the plaintiff-relator's] amorphous concern is no different from the concern any employee may have when she sues her employer for whatever reason." *Id.* at 786 (quoting *United States ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007)). The court also noted that, if the plaintiff-relator were to suffer retaliation for filing the qui tam action, the FCA would provide a cause of action. *Id.* (citing 31 U.S.C. § 3730(h); *Superlative Techs.*, 492 F. Supp. 2d at 564).

Here, it does appear that Relator's ability to practice her profession locally depends in

part on her reputation in the local professional community. Even under these circumstances, however, Relator has not demonstrated that her privacy interest is sufficient to overcome the strong presumption in favor of public access under the standard set by the cases discussed above. The Court therefore must deny Relator's motion to maintain the seal.

This Court also finds that Relator's alternative "request for a wholesale redaction of all identifying information is tantamount to maintaining a permanent seal over all of the documents filed in this action" because "even if [Relator's] name and other identifying information were redacted from the complaint, Defendant may still be able to deduce [her] identity from other the factual allegations in her complaint." *See Herrera*, 665 F. Supp. 2d at 786; *Superlative Techs.*, 492 F. Supp. 2d at 565. Relator's alternative request is therefore also denied.

## IV.     Conclusion

For the reasons discussed above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Relator Joyce Ruble's motion. (Dkt. 11.) The Court hereby **ORDERS** that this case be dismissed without prejudice. The Court further **ORDERS** that the Complaint, this Order, and all subsequently filed pleadings shall be unsealed. All other pleadings filed in this action shall remain under seal absent further order of the Court. The Clerk is **DIRECTED** to enter judgment.

**IT IS SO ORDERED.**


        **/s/ Peter C. Economus  -  November 8, 2011**
        **UNITED STATES DISTRICT JUDGE**